IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 22, 2006 Session

## TRACYE JENAE SIMPSON (BROGDEN), et al. v. RALPH EDWARD SIMPSON

**Appeal from the Circuit Court for Hamilton County**
**No. D-55387     W. Neil Thomas, III, Judge**

---

**No. E2005-01725-COA-R3-CV - FILED JUNE 26, 2006**

---

This appeal involves child support arrearages incurred by Ralph Edward Simpson ("Father") over the course of many years. Following a trial, the Trial Court concluded that certain payments made directly to the child were gratuitous and should not count as a credit against Father's child support obligation. The Trial Court also concluded that various payments made by Father to third parties for expenses incurred on the child's behalf and which were made as expressly directed by Tracye Jenae Simpson ("Mother") also should not count as credits against Father's child support obligation. We affirm the Trial Court's conclusion with respect to the money sent directly to the child. However, we conclude that the Trial Court erred in its conclusion that Father should not be given a credit for payments made to third parties for expenses related to the child and which were made by Father in accordance with the express directives of Mother. The judgment of the Trial Court is, therefore, affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit**
**Court Affirmed in Part and Reversed in Part; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which SHARON G. LEE, J., joined. CHARLES D. SUSANO, JR., J., filed a separate opinion concurring in part and dissenting in part.

John P. Konvalinka, Jim K. Petty, and Jillyn M. Pullara, Chattanooga, Tennessee, for the Appellant Ralph Edward Simpson.

Tracye Jenae Simpson (Brogden) and Sydney Jenae Simpson, *pro se* Appellees.

# OPINION

## Background

This appeal involves, among other things, claims by Father that he was not given proper credit against his child support obligation for certain payments he claims he made as expressly directed by Mother. Following the parties' divorce in October of 1985, Father's original child support obligation was set at $100 per week. In July of 1988, Father's child support obligation was reduced to $60 per week and Father was ordered to pay the child support directly into court. The next document in the record was entered almost twelve years later on April 3, 2000, and is an Amended and Restated Final Decree which established Father's child support payment at "$1,665.00 *per month*, [payable] directly to the plaintiff without wage assignment until the minor child of the parties attains age 18." (emphasis added). Although the Amended and Restated Final Decree purportedly was signed by Mother, approximately 3½ years after this document was entered by the Trial Court, Mother filed a Motion to Set Aside that decree alleging that her signature was a forgery. Mother also filed a petition for contempt claiming Father was behind in his child support payments. In January of 2004, the Trial Court entered an agreed order which stated that the "parties have announced that the amended and restated final decree filed with the clerk on April 3, 2000 should be stricken and considered null and void …." Thus, Father's child support obligation of $60 per week as established in July of 1988 once again became effective.[1]

On January 16, 2004, Father made an Offer of Judgment in the amount of $60,000 pursuant to Tenn. R. Civ. P. 68. The Offer of Judgment apparently was rejected by Mother and the trial took place on January 27, 2004, after which the Trial Court instructed the parties to respond to a series of questions. One of the questions posed to the parties was whether the Trial Court could give "credit for the payment by the Respondent of the child's car insurance or for monies paid directly to the child?" After the parties filed briefs providing their respective responses to the various questions, the Trial Court answered the above question as follows:

> **Court's ruling:** According to the order entered July 18, 1988, payments should have been made directly to the Court. Unless proof is brought forward, any payments made to the Plaintiff are presumed to have been for child support. Payments made on behalf of … [the child] are presumed to be gratuitous and not in payment of child support.

---

[1] We are at a total loss as to why Father would allegedly forge Mother's signature to a document which increased his annual child support obligation from $3,120 to $19,980, or roughly 640%. We are at an even greater loss at to why Mother would file a motion to set aside that order and effectively return Father's annual child support obligation to $3,120. But Mother did file such a motion and she obtained the exact relief she requested when seeking to have the Amended and Restated Final Decree set aside. As such, the Trial Court used the lower amount of $60 per week to calculate Father's arrearages. The Trial Court's reliance on the lower amount is not challenged on appeal, and we will, therefore, presume that amount is correct.

The Trial Court then entered its Final Judgment after calculating the total amount of arrearages plus accrued interest. According to the Trial Court, from July of 1988 through May of 2002[2], Father was in arrears a total of $8,350. However, the interest owed by Father through February of 2005 was $43,040.76, thereby resulting in a total judgment of $51,390.76. The accumulated interest was so high because Father had not sent any child support payments directly to the court and he was unable to prove with documentary evidence that he had made any child support payments to Mother from July of 1988 until August of 1997, at which time Father paid $650 directly to Mother. The Trial Court refused to allow Father to testify about child support payments he claimed to have made for which he could not back up that claim with documentary evidence such as a cancelled check or the like. In any event, it was not until after the parties' child became emancipated that Father paid Mother $33,800 toward arrearages, and Father was given credit for this amount when his arrearages were calculated. Following entry of the judgment, Mother filed a motion requesting that she be awarded attorney fees. The Trial Court granted the motion and awarded Mother $1,500 in attorney fees.

Father appeals raising several issues. Father claims the Trial Court erred in not giving him a credit against his child support obligation for payments he made on the child's behalf directly to the child or to third parties for tuition, car payments, and car insurance, all of which Father claims he made as expressly directed by Mother. Father also claims the Trial Court erred in refusing to allow Father to testify about payments he made before 1995 for which he was unable to locate cancelled checks or other documentary proof of payment. Finally, Father claims the Trial Court erred when it awarded Mother $1,500 in attorney fees. Although Mother has requested this Court to affirm the decision of the Trial Court, no brief was filed on Mother's behalf.

### Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We have not been provided with a transcript from the trial on January 27, 2004. However, we have been provided with a Tenn. R. App. P. 24(c) Statement of the Evidence specifically approved by the Trial Court. Excluding the introductory paragraph, the Statement of the Evidence provides, in its entirety, as follows:

On January 27, 2004 a hearing was held before the Honorable Neil Thomas, III upon the Petition to Show Cause on Contempt filed

---

[2] The child was eighteen years old when she graduated from high school in May of 2002. Thus, Father's child support obligation ceased at that time, although he obviously still was responsible for any arrearages.

by the Petitioners/Appellees. Those testifying were Tracye Jenae Simpson, Sydney Jenae Simpson and Ralph Edward Simpson. Tracye Jenae Simpson stated that Ralph Edward Simpson was delinquent in the payment of his child support obligations in excess of $101,000.00 (claimed interest included) because he did not pay, in accordance with the order of the Court, the amounts through the court clerk.

Ralph Edward Simpson testified that he was in communications with his daughter Sydney Jenae Simpson and the Petitioner, Tracye Jenae Simpson on a regular basis and made arrangements with them for the payment of support to be agreed upon from time to time. Mr. Simpson conceded that he could not make the payments in accordance with the order of the Court but stated that he made payments for support and other necessary expenses at the direction of the Petitioner, Tracy (sic) Jenae Simpson, in excess of those required by the Court order. He further stated that he was unable to obtain and/or locate copies of his checks prior to October of 1995, but that he had made such substantial payments as agreed and at the direction of the Petitioner, Tracye Jenae Simpson both before that date and subsequent to October of 1995 in excess of the amounts that were due pursuant to the Court order. The checks which Mr. Simpson had been able to locate representing the payments he made that he was able to locate were attached as exhibits at trial, a copy of which are attached hereto.

Subsequent to the January 27, 2004 hearing, the parties executed a stipulation of questions that needed to be addressed by the Court by brief which were filed on or about March 26, 2004 with the Clerk of the Court. On or about September 23, 2004 the Court entered a Memorandum Opinion answering the questions propounded by stipulation stating that any payments made on behalf of Sydney Jenae Simpson were presumed to be "gratuitous and not a payment of child support". Subsequently, an Order was entered by the Court allowing credit for those checks/payments that were made directly to Petitioner Tracye Jenae Simpson only and not for any checks/payments made directly to the daughter or on her behalf for tuition, car payments/insurance and/or other expenses incurred on her behalf that the Petitioner, Tracye Jenae Simpson would have otherwise been required to pay, all of which are reflected in the

attached collective exhibit which total $9,392.70^3$ for which Ralph Edward Simpson received no credit.

As required by Rule 24(c) of the Tennessee Rules of Appellate Procedure, the Respondent/Appellant hereby submits and provides notice that the issue before the Court on appeal is whether Ralph Edward Simpson should have received credit for these documented payments that were made and/or should have been allowed to testify with regard to any payments made prior to October, 1995 since he had no record of such payments available to him at the time of trial.

In addressing the merits of Father's issues, we need to keep in mind the importance of the Statement of the Evidence. In relevant part, Tenn. R. App. P. 24 (c) and (f) provide as follows:

> (c) Statement of the Evidence When No Report, Recital, or Transcript Is Available. – If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant or the appellant's counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 90 days after filing the notice of appeal. Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. Proof of service shall be filed with the clerk of the trial court with the filing of the statement. If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement. Any differences regarding the statement shall be settled as set forth in subdivision (e) of this rule.

> * * * *

> (f) Approval of the Record by Trial Judge or Chancellor. – The trial judge shall approve the transcript or statement of the

---

[3] The correct amount reflected in the exhibit is actually $10,032.70.

evidence and shall authenticate the exhibits as soon as practicable after the filing thereof or after the expiration of the 15-day period for objections by appellee, as the case may be, but in all events within 30 days after the expiration of said period for filing objections. Otherwise the transcript or statement of the evidence and the exhibits shall be deemed to have been approved and shall be so considered by the appellate court ….

Although the Statement of the Evidence is limited, it was approved by the Trial Court and Mother never filed any objections claiming that it was inaccurate or incomplete, etc. Therefore, for our purposes on appeal, the Statement of the Evidence conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(c).

As noted, the primary issues surround Father's position that he was not given proper credit for various payments he claimed he made as directed by Mother. These payments total $10,032.70 and can be grouped into two categories, i.e., payments made directly to the child, and payments made to third parties for tuition, car payments and automobile insurance.

The first category involves five separate payments made directly to the child totaling $2,740. The payments are comprised of $1,000 in October of 1995, $190 in October of 1998, $700 in October of 2000, $350 in June of 2001, and $500 in August of 2003. As noted by this Court in *Brownyard v. Brownyard*, No. 02A01-9803-CH-00063, 1999 WL 418352 (Tenn. Ct. App. June 22, 1999), *perm. app. denied Nov. 29, 1999*, simply because a payment is made directly to the child does not automatically mean that the payment does not count as child support. We stated:

> Child support is usually paid to the clerk of the court or to the custodial parent. *See* Tenn. Code Ann. § 36-5-101(a)(4) (Supp. 1998); *State ex rel. Cope v. Cope*, No. 03A01-9404-CV-00119, 1994 WL 579976, at *2 (Tenn. App. Oct. 24, 1994) (Susano, J., dissenting opinion). Tennessee Code Annotated provides that "[t]he order or decree of the court may provide that the payments for the support of such child or children shall be paid either to the clerk of the court or directly to the spouse." Tenn. Code Ann. § 36-5-101(a)(4) (Supp. 1998). Tennessee courts allow a credit for payments made directly to a child "'for the children's necessaries which are not being supplied by the custodial parent.'" *State ex rel. Cope*, 1994 WL 579976, at *2 ….

*Brownyard*, 1999 WL 418352, at *15.

The Statement of the Evidence is altogether unclear regarding the intended use of the money that was sent directly to the child. However, Father wrote on the "memo" portion of the

October 1995 check for $1,000 that the money was to go into the child's savings account. On the check for $350 dated June of 2001, Father made a notation that the check was compensation for "casual labor." The other three checks contain no notation regarding the intended purpose of the money. Money paid to the child as compensation for "casual labor" can in no manner be considered child support. Likewise, money given to the child to be placed into a savings account would properly be considered as a gift to the child. Although three of the five checks made payable directly to the child contain no notation regarding the reason the money was being sent to the child, the Statement of the Evidence contains nothing to indicate to this Court that these three checks should be treated any differently than the other two which clearly were not child support. Accordingly, we affirm the judgment of the Trial Court insofar as it concluded that the five payments made directly to the child totaling $2,740 were gratuitous or otherwise should not be considered as a credit against Father's child support obligation.

Father's next issue is his claim that he should be given credit for various payments made directly to third parties. These payment total $7,292.70 and are comprised of $1,000 for tuition, $1,633.60 in car payments, and $4,659.10 for automobile insurance.

We note that there is nothing in the record indicating that after the parties were divorced that Mother ever filed a petition seeking to have the amount of child support increased. Because the Amended and Restated Final Decree which increased Father's child support obligation was rendered null and void by the Trial Court at Mother's request, at all relevant times Father's child support obligation remained at $60 per week. Whether that amount was appropriate or sufficient is not at issue in this appeal.

The Statement of the Evidence, as approved by the Trial Court, provides that Father testified he was in communication with Mother "on a regular basis" and that Father made "arrangements" with Mother "for the payment of support to be agreed upon from time to time." The Statement of the Evidence further provides that Father made these payments "at the direction of [Mother]." We see no practical distinction between Father sending child support payments directly to Mother, who in turn uses that money to pay the child's car payment and/or car insurance, and the situation here where Mother instead directs Father to make those payments for her, thereby eliminating the middle step. These payments clearly would be child support if Mother directed Father to pay the money directly into her checking account and he did so. We do not believe these same payments lose their character as child support simply because Mother, instead of directing the payments to go into her checking account, directed the payments to go to third parties in payment of expenses incurred by Mother for the child. The question is not whether Father should be given credit for these payments because they should be deemed for necessities under the law. Rather, the key factual point is that Mother specifically directed Father to make these payments for her. It would be inequitable for Mother *to specifically direct* Father to make these payments for her on the child's behalf, which Father did, and then for Mother to turn around and claim they were gifts. We arrive at this conclusion keeping in mind that the Statement of the Evidence as approved by the Trial Court contains no testimony or other proof whatsoever from Mother indicting that these payments were not made at her specific direction or that they actually were intended by either party to be gratuitous.

There likewise is no proof in the record that Mother was doing anything less than directing Father where to send the child support payments. The preponderance of the evidence weighs against the Trial Court's conclusion that the payments totaling $7,292.70 were intended as gratuitous payments.[4]

The next issue is whether the Trial Court erred when it prevented Father from testifying to child support payments that he claims to have made when he had no documentary evidence supporting the amount of those payments. Based on the record before us, all we are able to determine is that the Trial Court prevented Father from testifying to any child support payments he allegedly made wherein he had no documentary evidence supporting said payments. Father made no offer of proof once this testimony was excluded regarding the amount of these payments, to whom they were made, etc.

In the recent case of *Thompson v. City of LaVergne*, No. M2003-02924-COA-R3-CV, 2005 WL 3076887 (Tenn. Ct. App. Nov. 16, 2005), *perm. app. denied April 24, 2006*, we stated:

> An erroneous exclusion of evidence requires reversal only if the evidence would have affected the outcome of the trial had it been admitted. *Pankow v. Mitchell*, 737 S.W.2d 293, 298 (Tenn. Ct. App. 1987). Reviewing courts cannot make this determination without knowing what the excluded evidence would have been. *Stacker v. Louisville & N. R.R. Co.*, 106 Tenn. 450, 452, 61 S.W. 766 (1901); *Davis v. Hall*, 920 S.W.2d 213, 218 (Tenn. Ct. App. 1995); *State v. Pendergrass*, 795 S.W.2d 150, 156 (Tenn. Crim. App. 1989). Accordingly, the party challenging the exclusion of evidence must make an offer of proof to enable the reviewing court to determine whether the trial court's exclusion of proffered evidence was reversible error. Tenn. R. Evid. 103(a)(2); *State v. Goad*, 707 S.W.2d 846, 853 (Tenn. 1986); *Harwell v. Walton*, 820 S.W.2d 116, 118 (Tenn. Ct. App. 1991). Appellate courts will not consider issues relating to the exclusion of evidence when this tender of proof has not been made. *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001); *Rutherford v. Rutherford*, 971 S.W.2d 955, 956 (Tenn. Ct. App. 1997); *Shepherd v. Perkins Builders*, 968 S.W.2d 832, 833-34 (Tenn. Ct. App. 1997).

---

[4] Father correctly notes that tuition can be deemed a necessary. *See Peychek v. Rutherford*, No. W2003-01805-COA-R3-CV, 2004 WL 1269313, at *4 (Tenn. Ct. App. June 8, 2004), *no appl. perm. appeal filed* ("The obligation to provide necessaries requires the provision of appropriate food, shelter, tuition, medical care, legal services, and funeral expenses as are needed."). We note that Father fails, however, to cite any authority to the effect that car payments and car insurance can be considered a necessity. In light of our holding that Father is entitled to a credit for payments totaling $7,292.70 because he was directed by Mother where to make those payments, we need not decide whether Father is entitled to credit for the same payments because they were necessaries.

As stated, an offer of proof must contain the substance of the evidence and the specific evidentiary basis supporting the admission of the evidence. Tenn. R. Evid. 103(a)(2). These requirements may be satisfied by presenting the actual testimony, by stipulating to the content of the excluded evidence, or by presenting an oral or written summary of the excluded evidence. Neil P. Cohen, *et al. Tennessee Law of Evidence* § 103.4, at 20 (3d ed. 1995). Since we are unable to determine the substance of … [the excluded] testimony and whether that testimony would have affected the outcome of the trial, the failure of the defendant to make an offer of proof constitutes a waiver of the right to challenge the exclusion of this testimony. *Hatton v. CSX Transportation, Inc.*, 2004 Tenn App LEXIS 412, Tenn. App. No. E2003-01831-COA-R3-CV, 2004 WL 1459391 (Tenn. Ct. App. June 29, 2004).

*Thompson*, 2005 WL 3076887, at *9. Since Father made no offer of proof concerning the excluded evidence, we consider this issue waived.

The final issues involve Father's claim that the Trial Court erred in awarding Mother $1,500 in attorney fees. Father's argument on this issue is twofold. First, Father claims he would not be in arrears if given a proper credit in the amount of $10,032.70. Because we conclude Father was entitled to a credit of only $7,292.70, he still is in arrears. But even if we concluded that Father was not in arrears for any principal payments, his argument overlooks the substantial interest that accrued because the payments were not made timely.

Father's second argument is that the Trial Court erred in awarding any attorney fees because he made an offer of judgment which was rejected by Mother and which ended up being greater than the amount of the total judgment as awarded by the Trial Court. Father correctly notes in general terms that when an offer of judgment is rejected and the final judgment is less than the amount offered, this has the effect of shifting costs which accrued after the offer of judgment was made. *See* Tenn. R. Civ. P. 68 ("If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree shall pay all costs accruing after the making of the offer."). However, Father cites no authority for the proposition that an offer of judgment affects an award of attorney fees incurred both before and after the offer of judgment is made. Father also overlooks *Albright v. Mercer*, 945 S.W.2d 749 (Tenn. Ct. App. 1996) wherein we stated:

Finally, Mercer argues that this court should consider the fact that Mercer made an offer of judgment for $750.00 early in the case and that Albright only recovered $500.00. It is the opinion of this court that evidence of the offer of judgment is not admissible as evidence of the reasonableness of attorney's fees. Mercer made the offer of judgment pursuant to Rule 68 of the Tennessee Rules of Civil Procedure. This rule provides: "An offer not accepted shall be

-9-

deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs." Tenn. R. Civ. P. 68 (West 1996). The term "costs" as used in this rule does not include attorney's fees. *Person v. Fletcher*, 582 S.W.2d 765, 766-67 (Tenn. App. 1979). Thus, evidence of the offer of judgment is inadmissible.

*Albright*, 945 S.W.2d at 751.

We reject both of Father's arguments challenging the Trial Court's award of attorney fees. Accordingly, the Trial Court's award of $1,500 in attorney fees to Mother is affirmed.

In summary, we affirm the Trial Court insofar as it held that Father's payments totaling $2,740.00 which were made directly to the parties' child are not to be considered as credits against Father's child support obligation. We also affirm the Trial Court's award to Mother of attorney fees in the amount of $1,500. We reverse the Trial Court's conclusion that $7,292.70 in payments made by Father for expenses incurred by Mother and related to the child and which were made at the express direction of Mother are not to be considered as credits against Father's child support obligation. This case is remanded to the Trial Court for the sole purpose of recalculating Father's arrearages, including interest, after crediting Father with the $7,292.70.

## Conclusion

The judgment of the Trial Court is affirmed in part and reversed in part, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are assessed one-half to the Appellant Ralph Edward Simpson, and his surety, and one-half to the Appellee Tracye Jenae Simpson (Brogden).

_____

D. MICHAEL SWINEY, JUDGE

-10-