IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
_____

**FILED**

**February 1, 1999**

**Cecil W. Crowson**
**Appellate Court Clerk**

**ROBERT LELAND BRYANT and wife,**
**LINDA KAY WOLFSON BRYANT,**

    Petitioners/Counter-Respondents/
Appellants,

**SANDRA LYNN TODD BRYANT**        Davidson Circuit No. 97A-84

    Petitioner/Counter-Respondent,        C.A. No. 01A01-9806-CV-00337

Vs.

**JAMES ASHLEY BRYANT,**

    Respondent/Counter-Petitioner/
Appellee.
_____

FROM THE FOURTH CIRCUIT COURT FOR DAVIDSON COUNTY
THE HONORABLE MURIEL ROBINSON, JUDGE

Wende J. Rutherford, Paul A. Rutherford;
Rutherford, Demarco, White & Soloman of Nashville
For Appellants

Robert L. Jackson, W. Scott Rosenberg;
Jackson, Kweller, McKinney & Badger of Nashville
For Appellee

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HEWITT P. TOMLIN, JR., JUDGE** (Retired)

This is a termination of parental rights and adoption case. Petitioners-Appellants, Robert

Leland Bryant and Linda Kay Wolfson Bryant,[1] appeal the trial court's order denying their petition to terminate the parental rights of Respondent-Appellee, James Ashley Bryant, with respect to his minor children, Megan Rae Bryant, born December 13, 1991, and Devon Michael Bryant, born December 30, 1993.

Petitioners are the father and stepmother of Respondent, and are the grandparents of the minor children involved in this action. Sandra Lynn Todd Bryant and Respondent are married, but currently are separated, and are the parents of the two minor children who are the subject of this case.

In 1996, Respondent, his wife and their minor children resided in Colorado Springs, Colorado where Respondent was stationed in the military. In early March 1996, Respondent and his wife contacted Petitioners and asked them to care for the minor children until the Respondent and his wife could establish separate households. On March 9, 1996, Petitioner Linda Bryant flew to Colorado Springs and returned to Nashville, Tennessee with the minor children on the same day.[2]

Primarily for purposes of medical insurance, the parties filed a proceeding in juvenile court for Petitioners to be awarded temporary custody of the children. By agreed order entered October 28, 1996, the juvenile court awarded custody of the children to the Petitioners. In December 1996, Respondent was discharged from the military and returned to Nashville where he resided with the Petitioners and the minor children. In May 1997, Respondent was requested to leave the home of the Petitioners. Subsequently, the Petitioners filed the instant Petition for Termination and Adoption on July 2, 1997. The petition alleges abandonment as grounds for termination asserting that Respondent had token visitation with the minor children and had willfully failed to support or make reasonable payments toward the support of the minor children for a period of more than four consecutive months immediately preceding the filing of the petition. Respondent filed an answer denying the allegations of abandonment and filed a counter-petition requesting that he be awarded custody of the children based on a material

---

[1] Sandra Lynn Todd Bryant, wife of Respondent and mother of the minor children involved, joined the Petitioners in the petition to terminate the Respondent's parental rights. In the petition, she consents to the termination of her parental rights.

[2] Respondent's wife subsequently left the couple's home in Colorado to pursue job training in Florida. Upon completion of the two month job training course in Florida, she moved to Utah while Respondent continued his military career in Colorado.

change in circumstances and that he be awarded attorney fees. On December 5, 1997, Petitioners filed an Amended Petition for Termination and Adoption asserting the same grounds for termination and that termination of Respondent's parental rights would be in the best interests of the children. At the conclusion of an evidentiary hearing on May 27, 1998, the court announced that the petition would be denied. Petitioners filed an objection to an award of attorney fees to Respondent, and on June 9, 1998, an order was entered dismissing the petitions and awarding attorney fees to Respondent.

Petitioners have appealed and present the following issues for review as stated in their brief:

> 1. Whether the trial court erred in finding that Respondent James Ashley Bryant had never willfully abandoned his children and never willfully failed to support his children as defined by the plain language of T.C.A. § 36-1-102.
>
> 2. Whether the trial court erred in awarding attorney fees to Respondent James Ashley Bryant.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

The trial court found that there was not sufficient evidence to terminate Respondent's parental rights. The trial court stated that the Respondent never willfully abandoned his children nor had he willfully failed to support them, and that the Respondent has a good relationship with the minor children.

Petitioners contend that the trial court erred in denying their petition. They assert that Respondent's parental rights should be terminated because he has abandoned his children in that he has willfully failed to support his children as defined by the plain language in T.C.A. § 36-1-102. In support of their contention, Petitioners state that it was uncontroverted at trial that, from the time the children came to live with them in March 1996 until the date of trial, Respondent failed to make any monetary payments for the support of his children even though he had the means to support them. They assert that the trial court's finding was erroneously based on the court's conclusion that Petitioners allowed Respondent to be irresponsible in not supporting his children by allowing him to reside with them and not demanding that he support the children.

3

Petitioners contend that they did not have a duty to take steps to make Respondent accept financial responsibility for his children nor does their failure to insist that he accept financial responsibility alleviate him of such responsibility. They argue that there is no requirement or condition precedent in the statute that would require them to take any affirmative action to make Respondent support his children nor is there an exception in the statute for those whose parents allow them to be irresponsible. Thus, they argue that under the plain terms of T.C.A. § 36-1-102, Respondent abandoned his children, and his parental rights should be terminated. With regard to the issue of attorney fees, Petitioners contend that the trial court erred in awarding fees since there is no statutory provision for the award of attorney fees in adoption cases.

On the other hand, Respondent contends that the requirement that support be paid does not require that it be paid directly to the custodians. Respondent asserts that the proof revealed that he did various things for his children such as paying for dance lessons, buying dance shoes, taking the children out for dinner, taking the children to entertainment establishments, and taking the children on trips. Respondent further contends that the individual circumstances of each case must be considered, and that the unique circumstances of this case support the conclusion of the trial court. This situation is unique, according to Respondent, because the grandparents of the children have taken custody of the children, the grandparents have allowed their son to reside with them, the grandparents did not require him to pay money for rent, bills or groceries, nor did the grandparents request assistance from him for support of the children. He asserts that the Petitioners are jointly responsible for his actions and that it would be inequitable and unjust to reward Petitioners for the role they played in creating his behavior and irresponsibility. Furthermore, Respondent contends that the proof further revealed that termination of his parental rights was not in the best interests of the children. Finally, Respondent asserts that the trial court was correct in awarding him attorney fees, and further requests that he be awarded attorney fees for this appeal.

A parent has a fundamental right to the care, custody and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972). However, this right is not absolute. It may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982). T.C.A. § 36-1-113 (Supp. 1998) provides in pertinent part:

4

**36-1-113. Termination of parental rights. --** (a) The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

    &ast;     &ast;     &ast;

  (c) Termination of parental or guardianship rights must be based upon:

  (1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

  (2) That termination of the parent's or guardian's rights is in the best interests of the child.

    &ast;     &ast;     &ast;

  (g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:

  (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

    &ast;     &ast;     &ast;

With regard as to what constitutes abandonment, T.C.A. § 36-1-102 (Supp. 1998), as pertinent to our inquiry, provides:

  (1)(A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:

  (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;

    &ast;     &ast;     &ast;

  (B) For the purposes of this subdivision (1), "token support" means that the support, under the circumstances of the individual case, is insignificant given the parent's means;

    &ast;     &ast;     &ast;

  (D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means that, for a period of four (4) consecutive months, no monetary support was paid or that the amount of support paid is token support;

    &ast;     &ast;     &ast;

  (G) "Abandonment" and "abandonment of an infant" do not have any other definition except that which is set forth in this section, it being the intent of the general assembly to establish the only grounds for abandonment by statutory definition. Specifically, it shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights and responsibilities in order for a determination of abandonment to be made. Decisions of any court to the contrary are hereby legislatively overruled;

    &ast;     &ast;     &ast;

From a review of the record, we find that the evidence preponderates against the findings of the trial court. The actions by Respondent constitute "abandonment" as defined by the foregoing statutory provisions in that he willfully failed to support or make reasonable payments toward the support of the children for a period of more than four consecutive months immediately preceding the filing of the Petition for Termination and Adoption.

The record reflects a father who has failed to provide monetary support for his children and who has irresponsibly relied upon others to raise and support his children. As previously mentioned, Respondent sent his children to live with his father and stepmother in March 1996 while he and his wife were having marital difficulties. At no time while the children resided with Petitioners and he resided in Colorado did Respondent send any monetary support to his children. While the children resided with Petitioners and during the time that his wife had ceased residing in the same household with him, Respondent, as part of his service in the military, continued to receive extra military benefits for the support of his family. Rather than send this money to Petitioners to support his children, Respondent spent the money on himself. Furthermore, Respondent also received Social Security benefits because of his son's congenital birth defects. As with the military benefits, Respondent did not send this money to Petitioners. Rather, Respondent used this money for his own benefit. Respondent's excuse for not sending such money to support his children is that Petitioners did not ask for any money.

As previously noted, in December 1996, Respondent was discharged from the military. Upon being discharged, Respondent moved back to Nashville and moved in with Petitioners and his children. Petitioners allowed this so Respondent could get back on his feet in order to be able to support himself and his children. Respondent soon after became gainfully employed. However, there is not one episode from the time he moved in in December 1996 until the time he was requested to move out in May 1997[3] that Respondent provided any reasonable monetary support for his children, purchased any groceries for the children, purchased any diapers or

---

[3] Petitioners requested that Respondent move out of the residence for a number of reasons. According to Petitioners, they stated that they could not stand Respondent living in the house any longer because of his irresponsibility, his failure to clean up after himself, his lifestyle, and the fact that he left pornography out in the open in his room.

According to Respondent, he said Petitioners requested that he move out for two weeks because of company that was coming to visit. When Respondent returned to the house at a later time, Petitioners had changed the locks to the house.

clothing for his children, or purchased any Christmas or birthday presents for them. In addition, when asked if he would help with Devon's medical bills, Respondent, on one occasion, stated he could not afford to pay, and, on another occasion, he simply picked up the bill and threw it down. However, the evidence reveals that Respondent had the money to purchase a computer, software, and a guitar for himself and to maintain monthly Internet service for himself.

Furthermore, Respondent admits that he failed to provide any monetary support to Petitioners for his children. On May 27, 1998, Respondent testified as follows at the proceedings below:

> Q. Since March of 1996, have you paid any monetary support to
> Robert or Linda Bryant for the support of your minor children?
>
> A. No, I have not.
>
> Q. Have you paid one dime?
>
> A. No, I have not.

However, Respondent contends that he did provide support for his children. As support for this contention, he testified as follows:

> Q. Tell the Court some of the ways that you spent money on your
> children during that period of December '96 to May of '97.
>
> A. I took my kids to Discovery Zone, paid for everything there.
> I had taken them out to eat on occasion. I remember one time I
> was at -- I was coming back from Georgia, I stopped in Cracker
> Barrel, I bought Megan a kaleidoscope, I bought Devon a
> harmonica and brought those home to them.

According the plain terms of the statute, this Court views Respondent's assertions of support to constitute, at best, mere token support.

In addition to failing to provide monetary support for his children, Respondent failed to provide any other type of support for his children. For example, he left the day-to-day care of his children in the hands of Petitioners, he spent more time on the computer than with his children, he only attended one of Devon's speech therapy sessions and only one of Devon's numerous doctor's appointments and did so only at the insistence of Petitioners, and he briefly made an appearance at the hospital after one of Devon's surgeries.

While Respondent's irresponsibility may have been produced in part by Petitioners, this does not excuse him for failing to support his children. Nonetheless, we are bound to follow the plain terms of the statute as prescribed by the legislature. In construing statutes, this Court is to

ascertain and give effect to the intentions of the General Assembly. We must consider the statute as a whole in light of its general purpose and give the words utilized in the statute their ordinary, commonly accepted meaning. *Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 735 (Tenn. App. 1989). An unambiguous statute must be interpreted according to its plain meaning. *McClain v. Henry I. Siegel Co.*, 834 S.W.2d 295, 296 (Tenn. 1992).

Under the plain terms of the statute, a natural parent's willful failure to support or make reasonable payments toward the support of their children for a four month period immediately preceding the filing of the petition to terminate is an abandonment of the children and a ground for termination of that person's parental rights. The statute defines a willful failure to support or make reasonable payments toward the support of the children as where no monetary support is paid or that the amount paid is token support for a consecutive four month period. Furthermore, the legislature makes it clear that abandonment has no definition other than that set forth in the statute.

After reviewing this record, we find that there is clear and convincing evidence that Respondent has abandoned the children. Although this constitutes a ground for termination of parental rights, there must also be a finding by the court that termination of parental rights is in the best interests of the children. T.C.A. § 36-1-113 (c)(2). Since the trial court found no grounds for termination, the court did not make any determination concerning the best interests of the children. Accordingly, in view of our finding concerning abandonment, the case must be remanded for further proceedings to determine the best interests of the children.

With regard to the issue of attorney fees, we are not generally inclined to interfere with decisions concerning attorney fees in cases where awarding fees is within the discretion of the trial court. *Threadgill v. Threadgill*, 740 S.W.2d 419, 426 (Tenn. App. 1987). However, this deference extends only to cases in which the amount of the fee award is challenged, not to cases in which the legal justification of the award is at issue. In the latter case, this Court reviews the decision of the trial court the same as any other legal issue - with no presumption of correctness. *State Dep't of Human Servs. v. Shepherd*, 1989 WL 144019, at *1 (Tenn. App. Nov. 29, 1989).

A prevailing litigant had no right at common law to the payment of its legal fees or costs. *Mooneys v. State*, 10 Tenn. (2 Yer.) 578, 579 (1831); *McCormic v. Smith*, 668 S.W.2d 304, 306 (Tenn. App. 1984). The common law rule can be modified by contract, but in the absence of

such, the authority of the court to award attorney fees must be statutorily grounded. *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985); *Person v. Fletcher*, 582 S.W.2d 765, 767 (Tenn. App. 1979). Thus, in the absence of a statute, contract, or other compelling equitable ground, a trial court cannot compel a losing party to pay a prevailing party's legal expenses. *State ex rel. Orr v. Thomas*, 585 S.W.2d 606, 607 (Tenn. 1979).

Neither Respondent nor the trial court were able to point to any statutory support for the award of attorney fees in the type of proceeding before us. T.C.A. § 36-5-103(c) (Supp. 1998) allows the trial court to award legal expenses in custody and support proceedings. The proceeding before us in the case sub judice concerns termination of parental rights and adoption. There is no statutory authority which provides that the trial court can award attorney fees in such a proceeding. The trial court erred in awarding attorney fees to Respondent, and his request for attorney fees for this appeal is denied.

Accordingly, the judgment of the trial court is reversed. The case is remanded to the trial court for further proceedings to determine if termination of parental rights is in the best interests of the children. Costs of appeal are assessed one-half to Appellants and one-half to Appellee.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**DAVID R. FARMER, JUDGE**

_____
**HEWITT P. TOMLIN, JR., JUDGE** (Retired)